# CHARLESTON.

### DUNN'S EX'RS v. RENICK *et al.*

Submitted January 14, 1890.—Decided January 31, 1890.

1. WILLS—LEGACIES—INTEREST.

Where a legacy is given to a trustee for the support of the family of one of the testator's children, and made payable out of the proceeds of the sale of real estate, such legacy is to bear interest from the death of the testator.

2. WILLS—EXECUTORS—TAXES—RESIDUARY LEGATEE.

Where a will gives to the executors a naked power to sell real estate, neither the title nor the right to the possession passes to the executors, and they are not chargeable for the failure to rent the same until the sale can be made; and if the heirs permit such real estate to be returned delinquent for the non-payment of taxes, and the executors pay said taxes to prevent the loss of the land, they will be entitled, as against the residuary legatees a portion of the proceeds of said real estate, to credit for the taxes so paid.

3. WILLS—EXECUTORS—STATUTE OF LIMITATIONS.

Where a testator directs his executors to sell a certain farm, and out of the proceeds to pay, first, the debts of one of his sons on which another of his sons is surety, the executors can not pay any such debt which before payment becomes barred by the statute of limitations, when the statute is relied on by the debtors.

*J. W. Arbuckle* and *E. B. Knight* for appellants.

*R. F. Dennis* and *H. A. Holt* for appellees.

SNYDER, PRESIDENT:

Suit in equity brought in February, 1888, in the Circuit Court of Greenbrier county, by Mark L. Sports and John A. Preston, executors of John W. Dunn, deceased, against Lizzie T. Renick and others, to construe the will of said Dunn, and for other purposes. The said Dunn died in October, 1883, and his will was duly probated in said county in November, 1883, at which time the executors duly qualified. There is no controversy in respect to any of the provisions of the will except the eighth item, which is as follows:

"*Item 8th.* I direct that my executors shall, at such time and in such manner as they may judge will promote such sale for the best price, under and with the advice and counsel of my sons H. C. Dunn and John R. Dunn, make sale of my Kanawha lands, West Virginia, and the same may be sold under such direction and advice in the whole or in parcels as may seem at the time best and most advisable; and I direct my executors, out of the first proceeds arising from such sale, to pay off any indebtedness of my son Henry C. Dunn upon which my son John R. Dunn is his security, not exceeding in the aggregate the sum of $3,000.00 or thereabouts—my object in this devise being to provide for the payment of the debts of Henry C. Dunn upon which his brother John R. Dunn may be bound as his surety, and thereby relieve said John R. Dunn from such burden of liability; and, *secondly,* out of such Kanawha land fund my executors shall pay $7,000.00 to Sallie P. Dunn, the wife of my son Henry C. Dunn, who shall hold the same in trust for the support, maintenance, and comfort of the family of said Henry C. Dunn and Sallie P. Dunn, and the education of their children; and upon the death of the said Henry C. Dunn and Sallie P. Dunn any sum or sums remaining from such fund shall go to and be equally divided between children begotten of their marriage, or the survivors of such children—my purpose being in this devise to provide that there shall be paid on account of my son Henry C. Dunn, and for the purposes set out

and expressed in this item of my will, the sum of ten thousand dollars ($10,000.00) in the aggregate; first, such sum, say about $3,000.00, as will be sufficient to pay off any indebtedness of said Henry C. Dunn upon which John R. Dunn is security, and then, after such indebtedness shall be discharged and paid off, then the residue of said $10,000.00 shall be paid by my executors, say $7,000.00, to the said Sallie P. Dunn, wife of Henry C. Dunn, for the uses, *etc.*, set out in this (8th) item of my will; and it shall and may be lawful for the said Sallie P. Dunn, with the advice and consent of her friends, to invest any portion or the whole of such fund so paid to her in real estate, to be held by her in trust for the same purpose, and to vest at the death of herself and her husband in their children, in like manner and form as is herein provided for the personal fund."

By the tenth item it is provided that, after the payment of the $10,000.00 according to the eighth item, the executors are to pay $735.00 to Kate V. McNeel, and then divide the residue of the estate into four equal parts, and pay one of said parts to Lizzie T. Renick, one to Kate V. McNeel, one to John R. Dunn, and one to Sallie P. Dunn, wife of Henry C. Dunn; the said Lizzie T. Renick, Kate V. McNeel, John R. Dunn, and Henry C. Dunn being the only children and heirs at law of the testator. The executors are expressly authorized to convey all the real estate they may sell under the provisions of the will, and the testator requests that no security shall be required of them as his executors.

The cause was referred to a commissioner to report a settlement of the account of the executors, the amount of the debts of Henry C. Dunn for which John R. Dunn is security, and any other matter required by any party. The commissioner made his report, showing that the estate was indebted to the executors a balance of $711.83 as of January 10, 1888, and that the debts of Henry C. Dunn for which John R. Dunn is surety amount, as of November 5, 1888, to $2,076.05, including a judgment in favor of Jesse J. Livesay amounting to $360.10. Under the general provision of this reference, the commissioner made the following special statements: At the request of Jesse J. Livesay he stated that in October, 1876, the said Livesay recovered a judgment for $621.00

against Henry C. and John R. Dunn on a joint note in which the former was principal and the latter his surety. This judgment the commissioner reported as barred by the statute of limitations, and disallowed it. And at the request of other parties he reported that the rental value of the Kanawha farm since the death of the testator was $1,200 per year, and that said farm has been for the past ten years or more, and still is, occupied by Henry C. Dunn and family without the payment of rent, or any contract for such payment; also that said farm was returned delinquent for the non-payment of the taxes thereon for the years 1884, 1885, and 1886, and that to save the farm from sale for said taxes the executors paid the same, amounting to $773.13 and this sum the commissioner credited to the executors against the estate.

Jesse J. Livesay excepted to the report, because the commissioner refused to allow his said judgment of $621.00. Henry C. and John R. Dunn and others excepted to the allowance of either of the said judgments for $360.10 and $621.00 in favor of said Livesay, on the ground that each of them is barred by the statute of limitations. And John R. Dunn and Kate V. McNeel excepted to the report because it allows the executors credit for taxes paid on the Kanawha farm, and does not set-off the rents of said farm against the interest on the legacy of Sallie P. Dunn.

On May 2, 1888, the court entered a decree in which it decided and adjudged that, according to the true construction of the will of John R. Dunn, the legacy of $10,000.00 in favor of Sallie P. Dunn bears interest from the death of the testator; and, all the children and legatees of the testator having by their pleadings in the cause insisted upon a speedy sale of the Kanawha farm, the court in said decree directed the executors to sell the same at public auction. Under this decree the executors offered the farm for sale at two different times and places, but failed to make a sale on the first occasion for want of bidders, and on the second it was bid off by John R. Dunn for himself, Lizzie T. Renick, and Kate V. McNeel at the price of $16,000.00, but they failed to pay any money or comply with the terms of the sale.

On November 17, 1888, the court entered a decree by which

it overruled all the exceptions to the commissioner's report, except that one relating to the judgment in favor of Livesay for $360.10, as to which it reserved its decision to await a decision in another action then pending to determine the validity of said judgment, and, subject to this reservation, it in all respects confirmed the said report; and by the consent of the purchasers of the Kanawha farm the sale was set aside, and the executors ordered to resell it at either private or public sale, with the proviso that, if they failed to effect a sale by March 15, 1889, then they should rent it for one year from that time. From these decrees the defendants John R. Dunn, Lizzie T. Renick, and Kate V. McNeel have appealed.

The appellants contend that the court erred in deciding that the legacy of $10,000.00 to Sallie P. Dunn should bear interest from the death of the testator. It is apparent from the whole will that the testator intended to make his four children equal in the benefits of his estate, substituting the wife of his son Henry, as trustee for his family, in the place of said Henry. He in his will refers to the fact that he had during his life made advances to his two daughters and their husbands, and that such advances, added to the sums given them by the will, amount to as much as he can give them in justice to his two sons and their families. Nearly the whole of the provisions made for his other children came into their possession and enjoyment either before or immediately upon the death of the testator, and therefore, in order that the equality intended by the testator and manifested by his will should be preserved, the legacy to the wife and family of his son Henry should bear interest from the death of the testator. That such was the purpose of the testator is apparent, it seems to me, from the will itself. The substance of the eighth item, hereinbefore given in full, is that Sallie P. Dunn, as trustee for Henry and family, substituting the trustee for Henry, shall be paid $10,000.00 out of the proceeds of the Kanawha land, subject to the right of John R. Dunn to be indemnified as the surety of Henry out of said sum to the extent of $3,000.00. The object clearly was to give Henry, or those representing him, $10,000.00 as his equal share of the estate; but in the event that John R. should be com-

pelled, as surety of Henry, to pay for him debts to the pos-
sible amount of $3,000.00, provision is made for the payment
of these debts out of Henry's portion, so as not to compel
John R. to pay them, and thereby diminish his portion to
that extent, and in effect give it to the representatives of
Henry. This legacy is, in terms, given "for the support,
maintenance, and comfort of the family of Henry and Sallie
P. Dunn, and the education of their children." The sale of
the farm out of which this legacy is to be paid is indefinitely
postponed by the will. More than five years have elapsed,
and no sale has yet been effected. If, therefore, interest is
disallowed on this legacy, not only will the equality of the
intended benefits of the will be greatly disturbed, but until
the sale and payment of the legacy there is no provision for
the support of Henry and his family, or the education of his
children. The facts and circumstances, as well as the terms,
of the will, it seems to me, under the settled law of this
State, make it plain that this legacy should bear interest from
the death of the testator. *Hite* v. *Hite*, 2 Rand. 409;
*Bradford* v. *McConihay*, 15 W. Va. 732; *Couch* v. *Eastham*,
29 W. Va. 784, (3 S. E. Rep. 23.)

The next and most important question in this cause is,
who, if any one, should be charged with or made accounta-
ble for the rents and profits of the Kanawha farm? This
farm has been occupied by Henry C. Dunn and his family
ever since and for many years before the testator died, with-
out paying any rent, or any contract to pay rent. It is very
plain to me that the executors are not liable for the rents.
The legal title was not devised to them. They were simply
given a power of sale, without any interest or control except
the mere naked authority to sell and convey the land. A
devise of land to be sold by executors confers a naked power,
and does not give any interest. In all cases when the execu-
tors have only such naked power or authority to sell, the
freehold descends to the heir, who is entitled to the rents
and profits until the sale. Pow. Dev. 292, 292; *Bell* v.
*Humphrey*, 8 W. Va. 1, 15; *Mosby* v. *Mosby*, 9 Gratt. 584
500.

It is contended however, by the appellants that the legacy
given to Sallie P. Dunn should be charged with the rents

of this farm, at least, to the extent of the interest on her legacy. This legacy having been given to her, not as her separate estate, but as trustee for herself, her husband, Henry C. and their children, and they having occupied and derived their support therefrom, they insist that it would be unjust and inequitable to pay them interest on the legacy on the ground that they were entitled to such interest as a means of support until the legacy should be paid to them, and then permit them to use and enjoy the farm out of the proceeds of which the legacy is to be paid, and derive their support from the farm, without any charge for such use, or any abatement of the interest on the legacy. This they claim would be, in effect and substance, to furnish them the means of their support, and to pay them for it at the same time. There would be much force in this contention if the facts in the record now before us showed that the trustee or the family of Henry C. Dunn did in fact derive their support, or any part of it, from the Kanawha farm. The record shows that this farm has been in the possession of Henry C. Dunn, who is one of the owners and co-tenants in whom the legal title vested on the death of the testator. He had the right, as such co-tenant, to the possession and use of the farm until a sale should be made, according to the direction of the will. He had not, it is true, the right to the entire rents and profits. He, as one of the joint owners, would be liable to his co-owners, the other heirs, for their portion of the rents. This liability is a matter between him and them, which they may settle among themselves, and which is not pertinent to this suit. But because Henry, as such joint owner, is liable for the rents of the farm, it does not necessarily follow that his wife as trustee and his family are also liable, merely because they resided with him upon the farm. If it appeared that Henry was insolvent, or for some other cause unable to account to his co-owners for the use of the farm, and that his wife and family did in fact derive their support or any part of it from the farm, then we think it would be just and equitable that the value of the support so derived from the farm by the family should be deducted from the interest on the legacy to Sallie P. Dunn; and since there are facts and circumstances in the record

tending to show that it is probable, if the proper inquiry had been made, it would appear that some part of the rents of the farm ought to be set off against the interest, not the principal, of said legacy, we think it but just and right to leave that inquiry open, so that, if any party desires, it may be made hereafter in the Circuit Court, and the value of such support, if any, when so ascertained, may be deducted from the interest on said legacy.

The appellants insist that the Circuit Court erred in crediting the executors with the taxes paid by them on the Kanawha farm after the death of the testator. As before shown, the title to this farm descended to and vested in the heirs, subject to a naked authority in the executors to sell it in the manner prescribed by the will. The heirs—that is, the four children of the testator—were liable, as the owners, for the taxes on the farm. They failed to pay them, and allowed the land to be returned delinquent, and the executors, out of their own funds, paid the taxes to prevent a sale and possible loss of the farm. It is unnecessary to decide whether or not they, having a naked power to sell, were under a duty to pay the taxes in order to preserve the estate, so as to enable them to sell as required by the will. It is enough to say they did not act officiously in the payment of these taxes. If it was not their duty to preserve the farm by paying the taxes, it is certain the heirs can not justly complain that they, in good faith and under a belief that it was their duty to do so, did what the heirs neglected to do. The payment of these taxes was for the benefit of the estate; and those entitled to the residuum being those whose duty it was to pay them, it is entirely equitable that the executors should be credited for the amount they paid, as against the residuary legatees for whose benefit the payment was made.

The only remaining assignment of error is that of Jesse J. Livesay, who contends that the court erred in overruling his exception to the commissioner's report, and disallowing his judgment for $621.00. The facts show that this judgment was rendered by the Circuit Court of Greenbrier county on June 12, 1877, on a bond executed by Henry C. Dunn and John R. Dunn, the latter being the surety of the former;

that at the time this suit was commenced more than ten years had elapsed since the return-day of the last execution issued upon said judgment; and that both Henry C. and John R. Dunn relied on the statute of limitations, and claimed in the court below that said judgment was barred. The counsel for Livesay does not deny that the statute of limitations would be a bar to said judgment, but for the provision in the eighth item of the will of John W. Dunn, wherein the testator says: "I direct my executors, out of the first proceeds arising from such sale, (the sale of the Kanawha farm) to pay off any indebtedness of my son Henry C. Dunn upon which my son John W. Dunn is his surety," *etc.* It is claimed that by this provision the testator made the debts of Henry on which John R. was surety a charge upon said farm, and, inasmuch as the said judgment was at the date of the will a valid and subsisting debt, it was the duty of the executors to pay it, and that their failure to sell the farm and pay it off was not the fault of the creditor, and can not change the rights of the parties. In other words, Livesay insists that the terms of the will showed an intention on the part of the testator to provide for the payment of said judgment, regardless of the statute of limitations. Our statute (section 10, c. 104, Code) declares: "No provision in the will of any testator, devising his real estate, or any part thereof, subject to the payment of his debts, or charging the same therewith, shall prevent this chapter from operating against such debts, unless it plainly appear to be the testator's intent that it shall not so operate." It is very evident that, if this was a debt of the testator, the language used by the testator would not, under this statute, be sufficient to prevent the bar of the statute of limitations, and *a fortiori* it is not sufficient to prevent the bar of the son's debt. Unlike a debt of his own, the testator was under no legal or moral obligation to pay the debts of his son, and there is nothing in the terms of the will to show any intention to pay any debt which the son could not be legally compelled to pay. As we have said in a former part of this opinion, the apparent and real object of this provision of the will was to indemnify John R. Dunn out of Henry's portion of the estate for any debts the former might be compelled to pay

as surety of the latter.   If neither John R. nor Henry C. had relied on the bar of the statute, it is probable that Sallie C. Dunn could not have done so; but as they both have relied on the statute, and neither of them can be legally compelled to pay, the executors would not be justified in paying said judgment.

For the foregoing reasons, the decrees of the Circuit Court are affirmed, but without prejudice to the right of any party to apply to the Circuit Court to ascertain whether, according to the principles announced in this opinion, any part of the support of the family of Henry C. Dunn was so derived from the Kanawha farm as to make the same a proper set-off against the legacy of Sallie P. Dunn and, if so, to allow the value thereof to be deducted from the interest on said legacy.

AFFIRMED.