# CHARLESTON.

## BROWN BRO'S *v.* POINT PLEASANT.

Submitted January 14, 1892.—Decided March 26, 1892.

1. DECLARATION—DEMURRER—MUNICIPAL CORPORATIONS.

   The council of the town of Point Pleasant, by an ordinance passed on the 12th day of June, 1882, ordered that a vote of the qualified voters be taken on the question of subscribing five thousand dollars to the capital stock of the Point Pleasant & Ohio

River Railroad, a corporation existing under the laws of this state. At the same time it was further ordered that a special election be held at the usual place of voting in said town on the 15th day of July, 1882, for the purpose of taking said vote, as provided by section 57, c. 17, Acts 1881, and chapter 11, Acts 1882. After the result of said election, which was favorable to the subscription by a vote of more than three fifths of those voting on the question, coupon bonds were prepared with coupons attached payable to bearer at the office of a bank of deposit in the city of New York. Thus being negotiable in form, these bonds were duly delivered to the railroad company, and passed into the hands of the plaintiffs for valuable consideration, they having purchased them at par from the president of the railroad company. The town having subsequently refused to pay ten of these interest coupons, which were detached and presented for payment, an action of *assumpsit* was instituted in the Circuit Court of Mason county. The declaration, under which a trial was had, set out the ordinances of the town, and the vote of the qualified voters; also an exact copy of one of the bonds sued upon, which bond recited the acts of the legislature by authority of which it was issued, the delivery to the railroad company, and the purchase for value by the complainants, and the failure to pay the semi-annual instalment of interest for which suit was brought. The declaration likewise contained, immediately after the recital of the said acts of the legislature and the ordinances of the town, the following general averment: "And so the plaintiffs aver that all of the said ten bonds and interest notes or coupons thereto attached were lawfully made, executed, sold and delivered by the said town of Point Pleasant to the said Point Pleasant & Ohio River Railroad Company." *Held*, a demurrer to this declaration was properly overruled. (p. 299.)

2. CONSTRUCTION OF STATUTES—CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS.

The authority conferred by said acts of the legislature, authorizing towns to subscribe to the capital stock of railroad companies and to issue bonds therefor, will be construed to be in aid of the constitution and not in violation thereof, and as providing that the town taking advantage of such legislation shall at the same time comply with all the provisions of the constitution, including section 8 of article X which is as follows: "No county, city, school district, or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted, in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness; nor without at the same time providing for the collection of a direct annual tax,

sufficient to pay, annually, the interest on such debt, and the principal thereof, within, and not exceeding, thirty four years: provided, that no debt shall be contracted under this section, unless all questions connected with the same shall have been first submitted to a vote of the people, and have received three fifths of all the votes cast for or against the same." (p. 301.)

3. DECLARATION—MUNICIPAL CORPORATIONS.

While the declaration in this case does not specifically allege a compliance with section 8 of article X of the constitution, yet it contains enough to make for the plaintiffs a *prima facie* case entitling them to recover; and, if the defendant wished to set up the defence of the unconstitutionality of the issuance of the bonds, it should have done so by proper pleading, and have sustained the issue by proper and sufficient evidence. (p. 301.)

4. ASSUMPSIT—PRACTICE—PLEADING.

In an action of *assumpsit*, it is not error in the court to reject special pleas which set up matter which amounts, in effect, to the denial of the original promise, for the reason that any evidence which the defendant has to sustain such pleas would be admissible under the general issue of *non assumpsit*, which, in this case, was pleaded. (p. 302.)

5. EVIDENCE.

It is the duty of a party objecting to evidence to specify and point out such portions as he deems objectionable, and, in the absence of any such specifications, the court will overrule the motion, if any of the evidence thus objected to *en masse* should be legitimate and proper. (p. 307.)

6. DEMURRER TO EVIDENCE—PRACTICE—CONSTITUTIONAL LAW.

The plaintiffs in this case, having proved substantially the allegations of the declaration by introducing the ordinances of the town and proving the canvassing of the vote, the delivery of the bonds, the incorporation of the town (which had been put in issue by a special plea) the purchase of the bonds by the plaintiffs for valuable consideration, and all other facts alleged which were necessary to make out a *prima facie* case, it was not error to overrule the defendant's demurrer to the evidence, and give judgment against it. It was not necessary for the plaintiffs to prove a compliance with section 8 of article X of the constitution, for the reason that the defendant had not put in that defence, as was its duty to do if it meant to rely upon the unconstitutionality of the bonds. (p. 303.)

7. NEW TRIAL.

It was not error, under the facts and circumstances of this case as described above, to refuse to set aside the verdict and judgment rendered and entered as above described. (p. 304.)

*Gunn & Gibbons* and *Tom'inson & Wiley*, for plaintiffs in error cited Const. Art. X. s. 8; 7 W. Va. 519; Acts 1881,

c. 17; Code, c. 39, s. 24; Woods R'y Law 265, 267; 45 N. Y. 772; 94 U. S. 255; 3 Am. R. R. Cas. 58, 64; Woods R'y Law 298; 1 Da.,236; 96 U. S. 51; 104 U. S 505; Dill. § 546; 111 U. S. 83; 1 Am. Dig. 90 ; 5 Rob. Pr. 324; 24 How. 299; Woods R'y Law 266, 272, 286, 287, 321; 108 U. S. 110, 117, 123, 282, 287; 99 U. S. 686; 88 Ill. 11; 63 Ala. 611; Dill. §§ 542, 546, 531; 1 S. E. Rep. 873; Sto. Cont. §§ 406, 452; Dwar. Stat. 657; Id. 46, 64; 5 McL. 178; Dev. C. C Rep. 158; 13 Ia. 310; 29 Conn. 210; 2 Cr. 169; 23 W. Va. 667; 27 W. Va. 681; 28 W. Va. 287; Woods R'y Law § 105; 95 Ill. 368; 11 Tenn. 329; 5 Am. & Eng. R'y Cas. 145; 46 N. Y. 110; 3 Am. & Eng. R'y Cas. 150, 158, 683; Code, c. 54, s. 57; 102 U. S. 278; 114 U. S. 190; 114 Pa. St. 435; 119 U. S. 74.

*Simpson & Howard* and *Brown, Jackson & Knight*, for defendants in error cited 9 W. Va. 73; 12 W. Va. 502; 11 W. Va. 236; 28 W. Va. 670; Code, c. 125, s. 40; 4 W. Va. 53; 18 How. 404; Code, c. 125, s. 14; Acts 1888 c. 17, ss. 57–59; 113 U. S. 227; 92 U. S. 484; 94 U. S. 104; Id. 278; 1 Wall. 384; 11 W. Va. 543; 18 W. Va. 274; 20 W. Va. 450.

LUCAS, PRESIDENT :

The council of the town of Point Pleasant, by an ordinance passed on the 12th day of June, 1882, ordered that a vote of the qualified voters be taken on the question of subscribing five thousand dollars to the capital stock of the Point Pleasant & Ohio River Railroad, a corporation existing under the laws of this State. At the same time it was further ordered that a special election be held at the usual place of voting in said town on the 15th day of July, 1882, for the purpose of taking said vote, as provided by section 57, c. 17, Acts 1881, and chapter 11, Acts 1882.

At a meeting of the council on the 17th of July, 1882, the vote upon the proposed subscription was canvassed, and it was ascertained that there were one hundred and twenty one votes cast, of which one hundred and three were in favor of said subscription, and eighteen opposed. The necessary three fifths required by the law were thus found to have voted in favor of the subscription.

Subsequently, on the 22d day of August, 1882, it was ordered by the council that the bonds with coupons attached of the denomination of five hundred dollars each, be signed and executed by the mayor and recorder, bearing interest at the rate of six *per cent. per annum*, payable semi-annually at the Metropolitan National Bank, Broadway, New York, payable to bearer in fifteen years from their date, but redeemable and payable, at the pleasure of the council, any time after five years, on publication of thirty days' notice in the New York Herald. It was further ordered that D. W. Polsley be appointed a committee of one to have said bonds printed, and, when executed, deliver them to said railroad company, and receive certificates of stock in said company therefor.

The form of the bond, for the interest of which the action was brought, is set out in full in the amended declaration, and is as follows :

"Town of Point Pleasant,          $500.00.
County of Mason, State of West Virginia.

Six *per cent.* bond.

By virtue of chapter 17, Acts of the Legislature of the State of West Virginia passed in the year 1881, and by virtue of an election duly held under the provisions of said chapter by the qualified voters of said town, in the county of Mason, State of West Virginia, on the 15th day of July, 1882, and of an order made by the council of said town on the 12th day of June, 1882 another order of said council made on the 17th day of July, 1882, and a further order of said council made on the 22d day of August, 1882, the said town of Point Pleasant, in the county of Mason and the State of West Virginia, hereby acknowledges itself to owe, and promises to pay, to the bearer hereof five hundred dollars, on the first day of November, 1897, with interest thereon at the rate of six *per centum per annum*, payable semi-annually on the first day of May and the first day of November each year, on the presentation and surrender of the annexed coupons as they severally become due ; said principal sum and interest to be paid at the Metropolitan National Bank, No. 110 Broadway, city of New York : provided, however, that the said town reserves to itself the right to redeem and pay off this bond and

accumulated interest at any time after five years from its date, by depositing within the Metropolitan Bank, No. 110 Broadway, city of New York, the amount of principal and interest due and unpaid herein at the time, the said town having first given thirty days' notice of its intention to redeem and pay the same by publication in the New York Herald, a newspaper published in the city of New York. In witness whereof the mayor and recorder of said town have hereunto set their hands, and annexed the corporate seal of said town, on this 1st day of November, 1882.

W. H. TOMLINSON, Mayor.
M. H. HALE, Recorder.

{ Corporate Seal of Point Pleasant, W. Va. }

At a meeting of the council held on the —— day of January, 1883, it was recited in an order of that date that D. W. Polsley, theretofore appointed as agent, *etc.*, to make the subscription to the stock of and to deliver the bonds to said railroad company for said subscription, reported that he had subscribed on behalf of the town, and that the bonds had been prepared and executed as directed by the order of the council of November 1, 1882, and delivered to said company in accordance with the instruction of the council, and returned a receipt therefor showing that the town was entitled to the stock of the company at the par va ue of five thousand dollars, upon request, and when the stock of the company should be ready for issue to the subscribers; and upon motion said report was received, the action of said agent Polsley approved and ratified, and upon a further motion said Polsley was appointed as proxy to represent the stock of the town in the meeting of the stockholders of the company.

This action was brought to obtain judgment on overdue and unpaid coupons in the hands of the plaintiffs, amounting, in the aggregate, to the sum of one thousand and fifty dollars. The defendant pleaded *non assumpsit*, and tendered nine special pleas, of which three on motion of the plaintiffs were rejected. The defendant demurred to the original declaration, which demurrer was sustained, and an amended declaration filed, to which a demurrer was also put in by the defendant, but the same was overruled; the

cause was tried by jury, and damage was assessed in favor of the plaintiffs to the amount of one thousand, one hundred and seventy six dollars, subject to the judgment of the court upon a demurrer to the plaintiffs' evidence, which had been tendered and joined in. The Court, however, overruled the demurrer to evidence, and gave judgment for the plaintiffs and costs. The defendant moved the court to set aside the verdict of the jury, and the judgment rendered thereon, and grant a new trial; but the court overruled the motion, and the defendant excepted.

In the progress of the trial the defendant reserved exception to the action of the court in rejecting its three pleas 2, 4, and 7. It also excepted to each and every part of the plaintiffs' evidence, which objections being overruled, exceptions were reserved. These pleas were as follows:

"Plea No. 2. (Rejected.)   W. H. Brown, F. A. Brown, and H. P. Brown, partners in business under firm name of *W. H. Brown & Bros.* v. *The Town of Point Pleasant*, a municipal corporation under and pursuant to the laws of the State of West Virginia. Trespass on the case in *assumpsit*. And the said defendant, by 'its attorneys, comes and defends the wrong and injury," *etc.;* "and for plea says that the plaintiffs ought not to have or maintain their aforesaid action thereof against the defendant because the defendant says that the bonds and coupons mentioned and described in plaintiffs' declaration were made, executed, and delivered to the Point Pleasant and Ohio River Railroad Company (mentioned in said declaration) without authority of law, in this, that each of the bonds so made, executed, and delivered as aforesaid the said town acknowledged itself to owe and promised to pay to the bearer thereof five hundred dollars on the first day of November, 1897, with interest thereon at the rate of six per centum, payable semi-annually on the first day of May and the first day of November each year, and on each and every of the coupons attached to said bonds; and the coupons sued on in said action purport to be paid semi-annually, as so provided in said bonds; all of which was, at the time of the making, executing, and delivering all of said bonds and coupons, contrary to the law in such case made and provided, of all of which the

defendants had notice when they purchased the said bonds and coupons. And this the said defendant is ready to verify.

"TOWN OF POINT PLEASANT, DEFENDANT."

"Plea No. 4. (Rejected.) W. H. Brown, F. A. Brown, and H. P. Brown, partners in business under the firm name of *W. H. Brown & Bros.* v. *The Town of Point Pleasant,* a municipal corporation incorporated under and pursuant to the laws of the State of West Virginia. Trespass on the case in *assumpsit.* And the said defendant, by its attorneys, comes and defends the wrong and injury," *etc.;* "and for plea says that the plaintiffs ought not to have or maintain their action thereof against this defendant, because the defendant says that the bonds and coupons mentioned in plaintiffs' declaration, and each and every one thereof, were delivered to the said Point Pleasant and Ohio River Railroad Company by D. W. Polsley, a committee appointed by defendant for that purpose, who was as such committee to deliver said bonds to said railroad company, and receive for defendant certificates of stock in said railroad company therefor; and defendant says that said bond and coupons aforesaid were so delivered by said committee to said railroad company upon the terms and conditions aforesaid; but defendant says that said railroad company, at the time of the delivering of the bonds and coupons aforesaid to it, neglected and refused to give to said committee the certificates of stock aforesaid, and ever since refused to deliver the same to said committee, and has not at any time delivered said certificates of stock to this defendant, but hath continually neglected and refused to deliver said certificates of stock to this defendant; and of all this failure and matter the plaintiffs had notice when they purchased said bonds and coupons, and this the defendant is ready to verify.

"TOWN OF POINT PLEASANT, DEF'T."

"Plea No. 7. (Rejected). W. H. Brown, F. A. Brown, and H. P. Brown, partners doing business under the firm name of *W. H. Brown & Bros.* v. *Town of Point Pleasant,* a municipal corporation incorporated under and pursuant to the laws of the state of West Virginia. Trespass on the case in *assumpsit.* The defendant, for plea in its behalf,

says that the bonds and coupons mentioned and described in plaintiffs' declaration were delivered to said railroad company by D. W. Polsley, appointed a committee by and for this defendant, for which the defendant was to receive certificates of stock in said railroad company to the extent of the par value of said bonds; and the said railroad company agreed and bound itself to deliver to this defendant said certificates of stock upon request, as soon as the stock of said company should be ready for issue to the subscribers to the said capital stock of said company; that, after the said stock was ready for issue to the subscribers as aforesaid, the defendant often requested said railroad company to comply with its agreement, and deliver to defendant the certificates of stock subscribed for by it, but said railroad company wholly neglected and refused, and still neglects and refuses, to comply with said agreement and request to deliver said certificates of stock to it; but defendant says that the whole of the five hundred thousand shares of stock of said company set out in plaintiffs' amended declaration were sold and delivered to other parties than the defendant, and that no part thereof was ever delivered to this defendant or to its assignees; and that of the agreement aforesaid, and the failure of the said company to comply therewith, the plaintiffs had notice at the time the said ten bonds and interest coupons were sold and delivered to them, as set forth in plaintiffs' declaration; and this the defendant is ready to verify.

"TOWN OF POINT PLEASANT, DEF'T."

The defendant applied to this Court for a writ of error, and we are now to determine whether any error has been committed to its prejudice. It has assigned five errors in the court below, which we will proceed to consider in the order set out in the argument and petition of defendant's counsel.

The first assignment is that it was error to overrule the demurrer to the amended declaration. This declaration set out *in extenso* the orders of the council submitting the subscription to the voters, the canvassing and announcing the result, the subscription as consummated by the agent of the municipal corporation, and the bond itself, together

with the coupons. Attached to the declaration was a bill of particulars, although there were no common counts in the declaration. Annexed to the bill of particulars was a claim of interest on each coupon from its maturity. *Gibert* v. *Railroad Co.*, 33 Gratt. 586. The total amount shown as due by the bill of particulars, exclusive of interest, was one thousand and fifty dollars, and the amount found due by the jury was one thousand, one hundred and seventy six dollars. Among the averments of the declaration, after all the said recitals, is the following: "And so the plaintiffs aver that all of the said ten bonds and interest notes or coupons thereto attached were lawfully made, executed, sold, and delivered by the said town of Point Pleasant to the said Point Pleasant & Ohio River R. R. Co. And the plaintiffs further aver that afterwards, to wit, on the 2d day of November, 1882, the said Point Pleasant & Ohio River R. R. Co., for value received, sold and delivered to Samuel Thomas the said ten bonds, and all the interest coupons aforesaid; and which said ten bonds, and the interest coupons aforesaid, for value received, were sold and delivered by said Samuel Thomas to the plaintiffs, afterwards, to wit, on the day last named, who have ever since held, possessed, and owned the same, and still contine so to do."

The first question to be considered is the form of action. When the liability of a town is disputed, and the object is to obtain a judicial decision as to whether the town is chargeable with the claim set up, an action may be instituted, and, if sustained, a judgment obtained against the town. *Dunn's Ex'rs* v. *Renick*, 33 W. Va. 476 (10 S. E. Rep. 810); *Wells* v. *Town of Mason*, 23 W. Va. 456, 462; *Fisher* v. *Charleston*, 17 W. Va. 595. The action here was *assumpsit*. The bonds were negotiable and under seal, but the coupons were signed, but not sealed. Even had they been sealed, *assumpsit* under our statute would lie. Code, c. 99, s. 10. To the form of action, therefore, there was no valid objection. *Assumpsit* will lie on the promissory note of a corporation given under sanction of a legislative provision. 1 Chit. Pl. 119.

In order to validate the bonds, it was undoubtedly necessary to comply with section 8, art. X, Const. W. Va.

The provision of that section is as follows : "No county, city, school district or municipal corporation, except in cases where such corporations have already authorized their bonds to be issued, shall hereafter be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness in the aggregate, exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness ; nor without at the same time providing for the collection of a direct annual tax sufficient to pay annually the interest on such debt, and the principal thereof, within and not exceeding thirty four years : provided, that no debt shall be contracted under this section unless all questions connected with the same shall have been first submitted to a vote of the people, and have received three fifths of all the votes cast for and against the same."

If this provision were not complied with, it would certainly be in violation of the fundamental law to issue the bonds of a municipal corporation in this state for the purpose of contracting a debt, and the municipal authorities undertaking to do so might be enjoined by proper proceedings on behalf of taxpayers interested. *List* v. *Wheeling*, 7 W. Va. 501.

But the question now before us is whether such compliance is necessary *to be averred in the declaration,* or is the failure to comply a matter of defence to be pleaded specially or given in evidence, where that is proper under the general issue ?  The general principle is that the plaintiff need only aver those facts and circumstances which are necessary to make out a *prima facie* case in his favor, and this may often be done in a general way ; it being, as Mr. Chitty observes, some times dangerous to allege too much, for fear that, having alleged it, you should be bound to prove it.  For example, in declaring upon a covenant, the plaintiff is bound to assign breaches on the part of the defendant ; but on his own part, though the covenants should be dependent, he is only bound to allege generally that he has performed all that was required of him by the terms of the covenant. *Mason* v. *Bridge Co.*, 28 W. Va. 639.  So,

also, in an action on the case for negilgence, the plaintiff need not aver that he has not been guilty of contributory negligence, that being a matter of defence. *Carrico* v. *Railroad Co.*, 35 W. Va. 389 (14 S. E. Rep. 12); 1 Chit. Pl. 335.

The general rule established by the decisions of the Supreme Court of the United States would seem to be that the litigant who relies on the provisions of the constitution of the United States for his defence must set up the defence in the lower court, and show by the record that he relied upon the same. This principle would seem to be equally applicable to the courts of the state when a state constitution is relied upon to invalidate a contract which, independently of constitutional restrictions, would be valid and binding. The illegality of the consideration of a promissory note is a matter of defence by plea. 1 Chit. Pl. 401.

It will be observed that the declaration in this case avers, in a general manner, "that all of the said ten bonds and interest notes, or coupons thereto attached, were lawfully made, executed, sold, and delivered by the said town of Point Pleasant," *etc.* This averment, I think, taken in connection with the previous allegations, and the bond itself, which is exhibited, was sufficient; and if any extraneous circumstance, such as a failure to comply with section 8 of article 10 of the constitution of the State, was relied on by the defence, the defendant should have pleaded such failure, or given evidence of the same to the jury under the issue of *non assumpsit*, which was broad enough to cover all such defences.

It is argued, however, that the act itself under which the bonds were issued, viz., chapter 17, Acts 1881, was unconstitutional. This act must be construed with reference to the provisions of the constitution, and to the decisions of this Court in regard to constitutional construction. It will not be presumed that the legislature intended to confer authority upon any municipal corporation to violate the constitution; but the better and proper construction is that the legislature intended that the power by it conferred should be exercised under the restraint and restrictions and in accordance with the positive provis-

ions of the constitution of the State.  Hence, in order
to issue bonds which should be valid, it would be nec-
essary, not only to carry out the provisions of the act
of the legislature, but to supplement them by conforming
strictly to the requirements of the constitution, both of a
negative and positive character.  And had an issue been
made up upon this point, and had the defendant called for
the record of the municipal corporation, or otherwise
proved a failure to comply with section 8 of article 10, we
should have been called on to decide whether these negotia-
ble instruments, and the coupons thereto attached, were or
were not *void* in the hands of a holder or purchaser for
value.  As it is, however, as we have seen, this constitu-
tional defect, if such exist, was matter of defence and was
not interposed by the defendant, nor was any evidence of-
fered by it to sustain such defence under the issue of *non
assumpsit.*  We conclude, therefore that there was no error
in overruling the demurrer to the declaration.

The next assignment is that the court rejected three pleas
offered by the defendant, marked, respectively, Nos. 2, 4, and
7.  Upon examining these pleas, it will be found that they
relate to matters which, if true, would have the effect (sup-
posing them not otherwise demurrable) to negative the
original promise, or, what is equivalent thereto, to invali-
date it by reason of illegality or failure of condition occur-
ing at the very moment when the bonds were issued.  It is
manifest, therefore, that any evidence which would have
tended to support these pleas could have been offered under
the issue of *non assumpsit,* and hence, although it might not
have been erroneous to admit them, the defendant was
not injured by their rejection.

The third assignment is that the court erred in not reject-
ing all of the evidence of the plantiffs.  The bill of ex-
ceptions states the objection in the following manner : "And
the defendant by its attorney excepted and objected to
each and every part of the foregoing evidence going to the
jury, and to every item thereof; but the court overruled
said objection and exception, and allowed all of said evi-
dence to go to the jury."  In this general form of objec-
tion to evidence the court could not grant the motion of

the defendant, if the court should find that any of the plaintiffs' evidence was proper to be introduced. It is the duty of a party objecting to evidence to specify and point out such portions as he deems objectionable, and in the absence of any such specifications on his part the court will overrule the motion, if any of the evidence thus objected to *en masse* is legitimate and proper. 1 Thomp. Trials, § 696; *Barker* v. *Barker's Adm'r*, 2 Gratt. 344; *Thompkins* v. *Wiley*, 6 Rand (Va.) 242.

The next assignment of error is the overruling of the defendant's demurrer to the plaintiffs' evidence. At common-law a corporation could not issue bonds or notes but might be authorized to do so by statutory provision. The same applies to municipal corporations. Therefore it would be necessary to aver in the declaration, as was done in this case, the legislative authority which the plaintiff relied upon, and in the absence of proof to the contrary as we have before stated, such legislative act will be presumed to be not in violation of the constitution.

In the present case, it was not necessary to produce in evidence the act of the legislature, since the same would be judicially noticed by the court and the jury. The plaintiffs, however, introduced the ordinances of the town, the canvassing of the vote, the delivery of the bonds, the purchase of the same by the plaintiffs for a valuable consideration, the incorporation of the town (which had been put in issue by special plea) and all other facts alleged in the declaration which were necessary to make out a *prima facie* case. The plaintiffs, it is true, did not undertake to prove a compliance with section 8 of chapter X, of the constitution; but if, as we have seen, it was unnecessary to allege this in the declaration, so likewise was it unnecessary to prove it, unless the same had been put in issue by proper pleading, which the defendant omitted to interpose.

We may here remark that the plea of *non est factum* is properly applicable only to an instrument under seal; but as our Code has a provision, that, where the declaration asserts the signature and execution of a promissory note or other instrument not under seal, no proof thereof shall be required, unless the defendant deny the same under oath,

we may regard perhaps that the pleas put in by the defendant, marked "No. 5" and "No. 6," may be regarded as having put in issue the execution of the bonds as recited in the declaration. At all events, the deposition of C. W. Lamison proves facts, from which a jury might legitimately infer' the proper execution of the bonds. He deposes that he went to the mayor's office, and there met D. W. Polsley, the agent of the town of Point Plesasant, and W. H. Tomlinson, its mayor; when Mayor Tomlinson or D. W. Polsley handed him the bonds with the coupons attached, which are the subject-matter of this action. The ten bonds were produced to the jury with the corporate seal of the town attached thereto, as signed by W. H. Tomlinson as mayor, by whom or in whose presence they were delivered to the agent of the railroad company.

From this evidence and in the absence of all evidence to the contrary, a jury would have been justified in inferring that they were actually signed by the mayor, and sealed as required by law.

Upon the whole we find no error in the action of the Circuit Court in overruling the defendant's demurrer and giving judgment. This likewise disposes of the fifth and last assignment, that the Circuit Court erred in not setting aside the verdict of the jury.

We find no error in the judgment of the Circuit Court; and the same must be affirmed.

AFFIRMED.